**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re:                                                      Chapter 7

DARRYL LEE ADLER,                          Case No.  23-22201 (SHL)

                 Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### NOTICE OF MOTION TO DISMISS DEBTOR, DARRYL LEE ADLERS PETITION FOR CAUSE PURSUANT TO BANKRUPTCY CODE §707(a)

       **PLEASE TAKE NOTICE** that upon the application of Keimoneia Redish, Creditor, the undersigned will move this Court before Honorable Sean H. Lane, United States Bankruptcy Judge, for an order dismissing Debtor, Darryl Lee Adler's Chapter 7 petition for cause pursuant to 11 U.S.C. §707(a), located at the United States Bankruptcy Court, 300 Quarropas St., White Plains, New York 10601 on the 1st day of February, 2024 at 10:00 A.M.,

       **PLEASE TAKE FURTHER NOTICE** that answering papers, if any, shall be filed with the Court and served on the undersigned so as to be received not later than January 17, 2024 at 5:00 P.M.

Dated:  New York, NY
           December 20, 2024

GURFEIN DOUGLAS LLP
11 Park Place
New York, New York 10007
(212) 406-1600


By: /s/ *Richard A. Gurfein*
      Richard A. Gurfein
      rgurfein@gurfeindouglas.com

*Attorney for Creditor Keimoneia Redish*


To:
Marianne T. O'Toole, As Trustee
2 Depot Plaza
Ste 2 E
Bedford Hills, NY 10507

Ralph E Preite, Esq.
Koutsoudakis & Iakovou Law
Group PLLC
40 Wall Street
Ste 49th Floor
New York, NY 10005

Kurt Weinmann, Esq.
Schiavetti, Corgan, DiEdwards, Weinberg & Nicholson
711 Westchester Avenue
White Plains, NY 10604
KWeinmann@Schiavettilaw.com

U.S. Trustee
Office of the United States Trustee
Alexander Hamilton custom House
One Bowling Green, Room 534
New York, NY 10004-1408

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ 4

Background ...................................................................................................... 5

Jurisdiction and Venue .................................................................................... 7

Relief Requested ............................................................................................. 7

Basis for Relief Requested .............................................................................. 8

    Debtor's Income is Falsely Understated .................................................. 8

    Debtor's Expenses are Falsely Overstated ............................................... 9

    Debtor Fraudulently omitted significant assets from his filing ................. 11

    Debtor Sought to Place Significant Funds beyond the Reach
    Of the Trustee and Creditors ................................................................... 13

    Other Factors Supporting Cause .............................................................. 14

    Debtor's Income ...................................................................................... 15

    Debtor's Real Property ............................................................................ 17

    Debtor's Personal Property ...................................................................... 18

    Debtor's Expenses ................................................................................... 18

    Determining "Cause" .............................................................................. 19

Proposed Order ............................................................................................... 28

<u>Table of Authorities</u>

**<u>Cases</u>**

*Pavia v. State Farm Mutual Automobile Insurance Company*
    82 N.Y.2d 445 (1993) ..................................................................................8

*In re O'Brien*
    328 B.R. 669 (Bankr. W.D.N.Y. 2005) ......................................................11

*In re Zick*
    931 F.2d 1124 (6th Cir.1991) ....................................................................11

*In re Blumenberg*
    263 B.R. 704 (Bankr.E.D.N.Y.2001).........................................................11

*In re Griffieth*
    209 B.R. 823 (Bankr.N.D.N.Y.1996) .........................................................11

*Kornfield v. Schwartz*
    164 F.3d 778 (2nd Cir.1999).......................................................................11

*In re Keobapha*
    279 B.R. 49 (Bankr. D. Conn. 2002) ..........................................................16

*In re Spagnolia*
    196 B.R. 362 (Bankr. W.D.Ky.1995) ..........................................................16

*In re Piazza*
    719 F.3d 1253 (11th Cir. 2013) ..................................................................16

**<u>Statutes</u>**

11 U.S.C. § 707(a) ...........................................................................................4

28 U.S.C. §157 (a) ...........................................................................................3

28 U.S.C. §157 (b) ...........................................................................................3

28 U.S.C. §1334(b) ..........................................................................................3

28 U.S.C. §1409(a) ..........................................................................................3

New York Debtor and Creditor Law §283(1) .................................................13

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re:                                             Chapter 7

DARRYL LEE ADLER,                                  Case No.  23-22201 (SHL)

                  Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

Creditor, Keimoneia Redish (Redish), moves this Court for an order dismissing Debtor's

Chapter 7 petition on the grounds that his Petition is a substantial abuse of the bankruptcy laws.

Redish respectfully sets forth and represents:

## **BACKGROUND**

1. Debtor is a Board Certified Critical Care physician who was employed by Northwell
   Health, Inc. and Mt. Sinai Hospital to work in their Intensive Care Units.

2. Debtor, was a co-defendant in a personal injury, medical malpractice case brought by
   Creditor Redish, who as a result of defendants' negligence was brain damaged,
   wheelchair bound and unable to care for all of her activities of daily living. Drs.
   Stumacher and Ahmed and the Estate of Dr. Ciubotaru were co-defendant doctors. St.
   Barnabas Hospital was the co-defendant Hospital. The case was tried before Honorable
   Justice Joseph Capella and a jury in New York State Supreme Court, Bronx County and a
   verdict was rendered on April 12, 2019.

3. Judgment was entered on January 23, 2020 in the Bronx County Clerk's office (Exhibit
   1). After appeal and Redish's stipulation accepting the Appellate Division, First
   Department's decision to reduce the pain and suffering awards, the total present value of
   the Redish judgment was $22,929,519.28.  The past and future medical expenses and

nursing care portion of the present value was $12,028,538.60.

4. After the Appellate Division affirmance of liability and reduction of pain and suffering damages, the insurance carriers for the defendant doctors paid Redish their policy limits and Debtor and his co-defendant doctors received partial satisfactions of judgment.

5. Redish also entered into an agreement with St. Barnabas Hospital who was vicariously liable for the doctors' negligence which reduced the outstanding balance of the Redish judgment to $5,226,519.28 plus interest, for which Debtor and the doctor co-defendants are jointly and severally liable.

6. Redish took no action to enforce her remaining outstanding judgment until February of 2023, more than 3 years after the judgment was docketed, when an income execution on Debtor Darryl Lee Adler, was delivered to the Sheriff of Westchester County. The Sheriff was unable to serve Debtor directly so Debtor's primary employer, Northwell Health, was served.

7. Debtor's next payroll deducted $1,400 for the income execution. That money was later returned to Debtor after he made this filing.

8. Debtor, approximately 2 weeks after the income execution (Exhibit 2) was served on his employer, filed his Petition under Chapter 7 of the Bankruptcy Code.

9. Debtor's gross income over the five (5) years preceding his filing averaged $410,598 per year.

10. In his schedules Debtor has made false oaths and fraudulently understated his income.

11. In his schedules Debtor has made false oaths and fraudulently overstated his expenses.

12. In his schedules Debtor has omitted significant assets that would satisfy the Redish judgment.

13. Debtor's income is more than sufficient to cover the income execution filed by Redish.

14. In his schedules, Debtor claims his 2023 gross income of $348,000 (Schedule I Part 2, Petition is Exhibit 3), is approximately $72,000 less than his 2022 gross income ($405,129) and also his average income over the past 5 years. This false claim is almost $6,000 less monthly.

15. Debtor has fraudulently included expenses he is not obligated to pay. Debtor's claimed expenses overstate his actual obligated monthly expenses by approximately $2,500 per month.

16. Debtor has omitted a substantial asset from his petition. Debtor is possessed of a cause of action against his liability insurer and excess insurer for failing to negotiate in good faith to protect him from a personal excess judgment. He also possessed of a cause of action for legal malpractice against the law firm that represented him and two other doctor defendants. The recovery in either or both of those causes of action would substantially eliminate Debtor's obligation under the Redish judgment.

17. Creditor Redish moves to dismiss Debtor's petition as a substantial abuse of the bankruptcy law.

### Jurisdiction and Venue

18. This Court has jurisdiction to consider this motion, pursuant to 28 U.S.C. §157(a) and §1334(b). This motion presents a core proceeding, pursuant to 28 U.S.C §157(b). Venue is proper in this Court, pursuant to 28 U.S.C. §1409(a).

### Relief Requested

19. Creditor Redish seeks an order from the Court dismissing Debtor's bankruptcy filing for cause as a substantial abuse of the bankruptcy code and false oaths and accounts pursuant

to 11 U.S.C. §707 (a).

**Basis for the Relief Requested**

**Debtor's Income is Falsely Understated**

20. Debtor filed his petition on March 15, 2023. Debtor falsely claimed his monthly income, before all payroll deductions, was $29,000.00. This is in stark contrast to his average monthly income from the same employers over the 5 years preceding his filing. His income for the five (5) years prior to filing his petition was: 2018 - $404,389; 2019 - $371,897; 2020 - $390,553; 2021 - $481,020; 2022 - $405129.

21. His total income over that five year period was $2,052,988.00.

22. His average monthly income for the same period, before all payroll deductions, has been $34,216.50. That is more than $5,000.00 more monthly than Debtor claims his current income is.

23. Debtor's earnings in the two years prior to his filing (2021 and 2022) were $481,020 and $405,129 respectively. Debtor claims his 2021 income was an aberration since it included substantial overtime pay as a result of the pandemic. Even assuming that to be true, the following year which did not include significant overtime pay, was more than $400,000 or almost $5,000.00 per month more than Debtor claims currently.

24. In each of the 5 years Debtor worked for Northwell, he received income tax refunds. His most recent refund was $10,939 listed on his 2022 income tax returns. When asked at his 2004 examination if he ever considered increasing his exemptions on his W-4 form to his employer in order to increase his take home pay, he answered he likes getting a refund. (2004 Exam (Exhibit 4), page 85 lines 6-12)

25. Debtor's petition claims net monthly income in excess of expenses, which include $400

per month in a "reserve fund", of $572.71, a surplus (Schedule J). However, that does not take into account his tax refund. It is also based on exaggerated expenses.

**Debtor's Expenses are Falsely Overstated**

26. Debtor was divorced in 2007. His agreement and stipulation of settlement of his divorce action was marked as an exhibit at his deposition (Exhibit 6). The divorce decree, which incorporated the agreement, obligates Debtor to pay child support until each child is "emancipated". Article VIII, paragraph 7(a) states that "the parties intend that their children receive **undergraduate** college educations…" (emphasis supplied). And goes on to state, "All college expenses as set forth above shall be in connection with attendance at college or similar schooling post High School, for no more than a consecutive five year period after the child's graduation from high school."

27. Nevertheless, Debtor paid for his adult daughter (age 24), Amaya's graduate school to obtain her masters degree. Of the amount claimed as education and child care expenses, $1500 per month was for Amaya's graduate school (2004 Exam page 68 line 12). That was not an expense he was obligated to pay. Rather, that was a gift to his daughter. As such, it should have been scheduled as a gift in Part 5 of his Statement of Financial Affairs. Instead Debtor chose to fraudulently expand his expenses.

28. Debtor testified that he and his ex-wife, Maria, split his son, Darryl's college costs on a 50/50 basis (2004 Exam page 33 line 21-25). They each contribute $1500 per month. That is a total of $36,000 per year.

29. Debtor son attends SUNY Albany. Debtor submitted tuition bills for the Spring semester 2023 and the Fall semester 2023 (Exhibit 7). They total $10,550. Assuming a 50/50 split, he would be responsible for $5,275 per year or $440 monthly. His son's rent is $650 per

month. His share would be $325. His expenses for his son Darryl's education is $765 per month.

30. Debtor's claimed $3,000 per month for education expenses is more than triple his actual expenses (Schedule J).

31. Furthermore, on page 29 of the divorce agreement , Debtor is entitled to a "dollar for dollar credit against his child support obligation … towards room and board."

32. Debtor claims $3,033 per month child support. That amount would end upon his son reaching the age of 21, unless he was still in college, then it would end upon his reaching age 22 or when the expense ends in 5 months (May 2024 graduation).

33. However, as already stated, Debtor is entitled to a dollar for dollar credit against child support for the money he spends for his son's college room and board. He does not claim the child support was reduced by the credit. That means his expense for child support is overstated by at least that amount.

34. Debtor claims $1,000 per month (line19 of Schedule J) as "Cobra Insurance Payments for Debtor's ill brother. However, his bank records only disclose $6,000 in total paid to his brother over the two years preceding his filing.

35. Moreover, the insurance summary Debtor disclosed shows the cobra insurance payment is only $596.71 per month (Exhibit 11). That claim is also fraudulently overstated by over $400 per month.

36. Assuming Debtor has earnings similar to his previous 4-5 years, his income is roughly $5,000 per month more than he claims. His expenses are roughly $3,000 per month less than he lists in his schedules. That is a total difference between Debtor's fraudulent claims and his actual income and expense of approximately $8,000 per month. This is

significantly more than the income execution of 10% of his net, after exemption, income, would cost him.

**Debtor Fraudulently omitted significant assets from his filing**

37. For the Redish case, Debtor was insured with Medical Liability Mutual Insurance Company (MLMIC) and had liability limits of $1,300,000.00 per claim. Debtor also had and excess insurance policy with Medical Liability Insurance Pool (MMIP) of $1,000,000.00.

38. When the lawsuit was started, MLMIC assigned one law firm to represent its three insureds, Dr. Adler, Dr. Stumacher and the Estate of Dr. Ciubotaru. At no time was Debtor ever advised that he was entitled to have his own lawyer, paid for by the insurance company, represent just him. There was an inherent conflict in one law firm representing 3 doctors who each had different defenses.

39. At no point in the progress of the Redish lawsuit did MLMIC ever make an offer to settle the case. In fact, MLMIC consistently refused to make any offer.

40. Nine days before the jury rendered a verdict. Chistine Rockwell, Esq. from the firm of Garbarini and Sher, the attorneys who represented the St. Barnabas Hospital, placed on the trial record, outside the presence of the jury, that the trial was going very badly for the defendants. She demanded MLMIC make an offer within the insurance policy limits to settle the case and prevent a personal excess judgment against the doctors that her hospital was vicariously responsible for.

41. Your declarant, on behalf of our client, Keimoneia Redish, joined in that demand on the record.

42. Furthermore, on that same day, April 3, 2019, I mailed by overnight delivery a letter

(Exhibit 8), with separate copies for each doctor defendant, demanding settlement by payment of the policy limits. MLMIC never responded nor did Debtor's counsel.

43. Under New York law, an insurance company, by reason of its contract of insurance, has a duty to negotiate in good faith with a claimant in order to prevent its insured from being exposed to a personal excess judgment. New York's Court of Appeals in <u>Pavia v. State Farm Mutual Automobile Insurance Company, (1993, 82 N.Y.2d 445)</u> set forth the proof required to make out a "bad-faith" case against an insurance company. The Court said, "… in order to establish a prima facie case of bad faith, the plaintiff must establish that the insurer's conduct constituted a "gross disregard" of the insured's interests – that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer… In other words, a bad-faith plaintiff must establish that the defendant insurer engaged in a pattern of behavior evincing a conscious or knowing indifference to the probability that an insured would be held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted."

44. Debtor's 2004 exam testimony (pages 3-11 and 16-25) shows his own insurance company never discussed settlement, the relative strengths and weaknesses of his joint defense and whether he would be better off being represented by separate counsel.

45. Debtor has assets in the form of causes of action for valid claims both for legal malpractice and for bad faith. Either of these claims, if pursued, would be able to eliminate Debtor's obligations under the Redish judgment and would leave only consumer debt for his mortgage and his cars.

46. Neither the claim for bad faith nor the claim for legal malpractice were listed as assets in

Debtor's filing.

47. According to Debtor's Schedule A/B, Property, in addition to his domicile, Debtor has an interest in a $988,500 house in Long Beach NY currently used by his sister as her residence.

48. Debtor also has three cars registered to him ( Schedule A/B part 2). One of which his daughter uses. Debtor claims his daughter paid the loan on that car and pays him $156 per month for insurance.

49. Debtor claims he has 8 bank accounts (Schedule A/B) with deposits totaling $6,721.

50. Debtor however, failed to disclose that he also has a Venmo account. The Venmo transactions in just two of the aforementioned bank accounts for the period of one year prior to his filing, shows payments of $27,223 and deposits into the accounts from Venmo of $6,854.

51. In Part 9 of his Statement of Financial Affairs Debtor lists what he calls his mother's Wells Fargo Checking account with a balance of over $40,000. However, Debtor is a joint owner of that account and in April of 2021 he made two transfers from that Wells Fargo account in the sum of $5,000 each, to his Citizen's Bank account and used those funds to pay off student loans.

**Debtor Sought to Place Significant Funds Beyond the Reach of the Trustee and Creditors**

52. Less than three months before Debtor filed his Chapter 7 petition, he deposited $14,500 into an old IRA that had a balance of approximately $5,000 for many years Exhibit 9).

53. On December 16, 2022 Debtor deposited $7,000 into his self-directed IRA.

54. On January 3, 2023 Debtor deposited $7,500 into his self-directed IRA.

55. Debtor first opened his §457 retirement account 3 months before filing.

56. Both of those deposits were not deducted from income since they were beyond the maximum allowed into retirement accounts. The maximum allowed in 2022 was $27,000 and that was withheld by his employer and deposited monthly into his §403(b) and §457 accounts.

57. Debtor fraudulently made the aforesaid deposits with intent of preventing his creditors from reaching those funds.

## Other Factors Supporting Cause

58. In calendar year 2022, the year prior to filing his petition, Debtor paid Credit Card expenses of $82,728. Of that sum $16,814 was paid to American Express despite the fact that Debtor claimed he did not have an American Express account. Debtor testified that the American Express card payments were to his girlfriend's account. He claimed that she paid for food and his and his son's cell phone bill as well as their vacation trip to Hawaii.

59. Hawaii was not the only vacation Debtor took. Debtor went on 4 vacations in the period of less than one year prior to filing. He went to Hawaii, San Francisco, Lake Tahoe and Vail.

60. The Redish judgment was docketed on January 23, 2020. Knowing that he owed Creditor Redish money on her judgment, he did not change his extravagant lifestyle. $82,000+ in credit card charges, 4 vacations, $14,500 extra deposited into an IRA, Child support and educational expenses ending this coming May, 2024. Still Debtor did nothing to reduce his debt to Keimoneia Redish.

61. Debtor filed his petition 2 weeks after Creditor Redish had the Sheriff of Westchester County serve an income execution. Debtor can easily afford to pay the income execution

from current income.

**Basis for Dismissal**

62. Debtor's Chapter 7 case was not filed in good faith and was a substantial abuse of the bankruptcy process and constitutes cause pursuant to 11 U.S.C. §707(a). In re O'Brien, 328 B.R. 669 (Bankr. W.D.N.Y. 2005) Chief Judge John C. Ninfo, II, found that a bad faith filing is cause to dismiss a Chapter 7 case under § 707(a), citing In re Zick, 931 F.2d 1124 (6th Cir.1991), In re Blumenberg, 263 B.R. 704 (Bankr.E.D.N.Y,2001) and In re Griffieth, 209 B.R. 823 (Bankr.N.D.N.Y.,1996).

63. Additionally, Chief Judge Ninfo wrote: "…that (1) Bankruptcy Courts are courts of equity; (2) bankruptcy is a privilege, not a right; (3) Chapter 7 is for the honest but unfortunate debtor who is seeking a fresh start, not a head start; and (4) it is inconceivable that when Congress enacted Section 707(a), it did not intend for the Bankruptcy Courts to have the discretion, in appropriate circumstances where there has clearly been a bad faith filing, to find that there was cause to dismiss the case.

64. Creditor Redish recognizes that bad faith is merely one of the elements the Court should consider in determining whether "cause" for dismissal pursuant to §707(a) exists.

65. The U.S. Court of Appeals for the Second Circuit in Kornfeldt v. Schwartz, 164 F.3d 778, (2nd Cir. 1999), held that "A totality of circumstances inquiry is equitable in nature and the existence of an asset, even if exempt from creditors, is relevant to a debtor's ability to pay his or her debts."

**Debtor's Income**

66. To begin the analysis the Court should note that Debtor is a highly trained physician who at different points in his career held Board Certifications in Pediatrics, Internal Medicine

and Critical Care medicine.  Debtor is employed by Northwell Health, Inc and up until 2023, less than 3 months before he filed his petition, was also employed by Mt. Sinai Hospital as an Intensive Care Physician in the ICU.

67. Debtor's W-2 forms for the five years preceding his filing disclose incomes as follows:

      a.  2018: $404,389

      b.  2019: $371,897

      c.  2020: $390,553

      d.  2021: $481,020

      e.  2022: $405129

68.  Debtor's income over those 5 years ranged from a low of $371,897 in 2019 to a high of $481,020 in 2021.  Debtor's average annual income is $410,598.  According to Economic Policy Institute, that income places him in top 5% of wage earners in the United States[1].

69. Debtor claims his current income in 2023 is only $348,000.  Although by itself, it is not a small amount, it is still almost $24,000 less than his smallest year of the past 5 years.  Moreover, Debtor has failed to explain why his income has gone down after 5 years with the same employer.

70. Debtor's claimed income of $348,000 is more than $60,000 less than his 5-year average.  Even though that is a substantial income standing alone, Debtor has not explained the dramatic decrease in income from the prior year, $405,129 or from his 5-year average of $410,598.

71. Over the 5 years that Debtor worked for Northwell, his total wages were $2,052,988.  Other than his cars, which were purchased with auto loans, and his retirement accounts

---

[1] The Economic Policy Institute is a 501(C)(3), non-profit, nonpartisan think tank funded by foundation grants, labor unions and others.  According to the institute, in 2022, the top 5% of wage earners earned an average $344,667.

which were primarily payroll deductions of, at most, $27,000 annually, he claims only a minimal amount of personal and financial property.

72. Debtor claims in Schedule A/B that the total value of his household goods, electronics, clothes and jewelry is only $12,000.

73. Debtor claims he has 8 financial accounts at various banks, but his total deposits are only $6,723.25 (line 17) including a single brokerage account valued at $965.00.

74. Debtor claims his two cars are valued at $47,000. However, the current value of the 2 loans Debtor is paying to American Honda Finance Corp. total $44,625, leaving a net value of only $2,375.

75. Debtor does not claim ownership of any stocks, bonds or other financial instruments.

76. It is inconceivable that with an income of over $2,000,000.00 during the 5 years that Debtor worked at Northwell and Mt. Sinai, he bought no property and has no assets beyond what he had when he started at Northwell[2].

**Debtor's Real Property**

77. In Debtor's Schedules, in addition to the coop apartment in which he resides, he claims he is the owner of only a 1% fee interest in the Long Beach property that his sister and mother occupy as their residence. However, Debtor concedes that he is jointly and severally liable on the mortgage note to bank which was approximately $500,000 at the time of purchase.

78. Moreover, Debtor falsely claims this property is exempt from the reach of creditors citing New York's Debtor and Creditor Law §283(1) **Aggregate individual bankruptcy exemption for certain annuities and personal property**. This is a fraudulent claim.

---

[2] Debtor's §403(b) and §457 accounts represent his maximum contribution annually plus a rollover deposit that was funded in the first year of working for Northwell.

79. Debtor and Creditor Law §283(1) only addresses personal property and annuities. Debtor's fee interest in the Long Beach property, to whatever extent it is, is a real property interest and not personal property or an annuity.

80. Debtor's fraudulent claim that the Long Beach property is exempt must be denied and his claim to only be a 1% fee holder is not consistent with his joint exposure on the mortgage.

## Debtor's Personal Property

81. Debtor's Schedule A/B, pages 3 and 4, claim total personal property, including household items, to have a value of only $12,000.

## Debtor's Expenses

82. Debtor's claimed expenses in Schedule J are a fraudulent attempt to show that he is barely making ends meet on his income.

83. His claim for Childcare and children's education costs, Aliimony, maintenance and support, and payments to support others, are all grossly exaggerated.

84. Debtor claims $3,000 per month in education costs. Debtor deposition testimony was that of his three children, only his youngest, Darryl Jo Adler, who is presently 21 years old, is still in undergraduate college. Darryl is presently a senior with an expected date of graduation this coming May, 2024, in only 5 months.

85. Debtor further testified that he and his ex-wife, Maria Adler, share Darryl's SUNY Albany expenses equally (2004 exam, page 33 line 21). He testified, "Both me and my ex split his college fees. She gives me 1,500. So it is roughly around 3,000 dollars a month, and that includes tuition, food, room and board."

86. However, Debtor also testified that he included in education expenses $1,500 per month

for the cost of his middle child, Amaya's, earning a Master's Degree.  Amaya is 24 years old, was in graduate school, and now has already completed her degree.

87. Debtor was not obligated by statute or by his Divorce Agreement to any higher education expense beyond undergraduate college which is specifically stated on page 22 paragraph 7, College expenses, of his Divorce Decree.

88. Debtor also claims payments of $3,033 per month in child support.  However, by the terms of his divorce decree debtor is entitled to "a dollar for dollar credit against his child support obligation".

89. Debtor ignores the credit he is entitled to which would reduce the $3,033 by at least $650.

90. Lastly, Debtor claims that he pays his ill brother's "Cobra Insurance payments" in the amount of $1,000 per month.

91. Debtor produced a summary of insurance payments for his brother Todd. That summary shows Todd's monthly Cobra Insurance payment is only $596.71 (Exhibit. Debtor has exaggerated this claimed expense by almost $400 per month or $4,800 per year.

**Determining "Cause"**

92. In determining whether the Debtor's filing rises to the level "cause", the Court should consider debtors attempts to place money and/or assets beyond the reach of the Trustee; Debtor's failure to make any lifestyle adjustments or his continued living an expansive or lavish lifestyle; Debtor filed the case only after a judgment creditor made an attempt to collect on the outstanding judgment; Debtor made no effort to pay his debts; whether Debtor's use of Chapter 7 was unfair; Debtor has sufficient income to pay his debts over time; Debtor's failure to adequately explain his lack of assets; Debtor's schedules inflate his expenses to disguise financial well-being; Debtor gave gifts and claimed them as

expenses; Debtor's overly utilizing the protections of the Code to the unconscionable detriment of creditors; Debtor employed a deliberate and persistent plan of evading a single major creditor; Debtor failed to make candid and full disclosure. See In re Keobapha, 279 B.R.49 (Bankr.D.Conn.2002), In re Spagnolia, 196 B.R. 362 (Bamnkr.W.D.Ky.1995)87 and In re Piazza, 719 F.3d 1253 (11th Cir, 2013).

93. Did Debtor attempt to place money and/or assets beyond the reach of the Trustee? Yes, he did. Debtor listed 3 IRAs (Schedule A/B line 21). A 403(b) plan and a §457 plan from Northwell and a self directed IRA.

    a. In the three months before he filed his petition, Debtor transferred $14,500 to his self directed IRA. Since these deposits were over his maximum allowable contribution, there would not be a deduction from income on his tax return. Exhibit

    b. His §457 plan retirement account wasn't created until December 2022, only two and a half months before he filed his petition. Although Debtor claims the value of the account is $15,021.81 he produced schedules which show a balance of $20,276.95. No explanation is offered to explain the difference. Exhibit

    c. All of his IRA funds, $763,042.46, are exempt from execution and thus opening the §457 account in December 2022 and adding money to the self directed IRA in the same month for a total of $34,776.95 are Debtors efforts to place money and/or assets beyond the reach of the Trustee.

94. Has Debtor made any adjustment to his expansive or lavish lifestyle. No, he has made no changes in his lifestyle.

a. Debtor went on four vacations with his then girlfriend (2004 exam page 51 lines 5- 25, page 79 lines 10-13, page 81 line 18)

b. In the calendar year before filing Debtor continued to make credit card purchases on his three Chase credit cards totaling $65,914.

c. During the same time period, Debtor paid his girlfriends American Express charges totaling $16,814.

d. Debtors total credit card payments in 2022 were $82,728 which fully paid the monthly balances on all of his credit cards. None of these expenditures resulted in the acquisition of any real or personal property; thus, all of these expenditures were for non-tangible luxuries.

e. Debtor's frequent vacations and credit card spending demonstrate that he has made no change in his expansive or lavish lifestyle.

95. Was Debtor's filing related to a creditor seeking to collect on her judgment? Yes, it was.

a. Creditor Redish delivered an income execution to the Sheriff of Westchester County who attempted to serve Debtor personally.

b. The Sheriff was unable to serve Debtor personally and, thus, served the income execution on Northwell, Debtor's employer in February, 2023.

c. Debtor filed his Chapter 7 petition on March 15, 2023 less than one month after the service of the income execution.

d. No other creditor has attempted to collect their debts from the Debtor.

e. This Chapter 7 filing was intended by the Debtor to eliminate only one debt. That of judgment creditor Redish (see form 108 part 1, of the petition).

96. Did Debtor make any effort to pay his debt to creditor Redish? No, he did not make any effort to pay his debt to Redish.

    a.   The Redish judgment was docketed and entered on January 23, 2020.

    b.   The Appellate Division decision and order was entered on June 3, 2021 (Exhibit 10) and Redish's stipulation to the reduction in the pain and suffering awards was on June 17, 2021.

    c.   No appeal was taken from the Appellate Division decision.

    d.   The Redish judgment became final and unappealable on July 17, 2021.

    e.   At no time since has Debtor sought to make any payment for any portion of the outstanding indebtedness to Creditor Redish.

    f.   Creditor Redish took no action to collect her debt from Debtor until the income execution was served in February 2023.

    g.   After having $1,400 deducted from his payroll, Debtor filed his Chapter 7 petition.  Debtor made no attempt to pay, compromise, settle, reduce or delay paying any portion of the outstanding balance on the Redish judgment.  Debtor only sought to eliminate his obligation on this single debt by filing his petition.

97. Is Debtor's use of Chapter 7 unfair? Yes, it is.

    a.   Debtor is a high income wage earner.  His annual income places him in the top 5% of all wage earners in the United States.

    b.   By May of 2024 all of his children will be emancipated and he will no longer be responsible for either child support or educational expenses at an alleged cost of $6,033 per month.

c.  Debtor's has an extravagant lifestyle which he has not changed.

d.  By contrast, Creditor Redish is severely handicapped, confined to a wheelchair and requires assistance with all activities of daily living.

e.  This Chapter 7 filing is unfair and an abuse of the Bankruptcy Code. Chapter 7 is referred to a liquidation remedy. However, there is no property being liquidated here. There is only the single debt to Redish that would be eliminated, were Debtor to be discharged.

f.  The United States system of tort law exists for three recognized purposes. Among them is to deter person from acting in ways that may produce harm. The Congressional Research Service is a federal legislative branch agency within the Library of Congress. It serves as shared staff exclusively to congressional committees and Members of Congress. Its report, update May 26, 2023, lists deterrence as one of the three reasons tort law exists in the United States. If Debtor obtains a discharge, he will have paid nothing out of his personal funds toward the Redish debt and deterrence will then be defeated. Exhibit

98. Does Debtor have sufficient funds to pay his debts over time? Yes, he does.

a.  It has been demonstrated above that Debtor's monthly net income is in excess of $8,000 per month rather than the claimed $572 per month.

b.  Moreover, Debtor's child support and education expenses disappear in 5 months when his now 21 year old son finishes college.

c.  Debtor, then, will have net disposable income, in excess of expenses, of approximately $14,000 per month.

d. Creditor Redish's income execution, which was Debtor's trigger to file his petition, would consume merely 10% of his disposable monthly income.

99. Has Debtor failed to adequately explain his lack of assets? Yes, he has failed.

a. It was demonstrated above that Debtor, whose income has been substantial over the last 5+ years does not appear to have acquired any real or personal property during that time.

b. Debtor earned, in the 5 years prior to filing, over $2,000,000 and has not listed any assets that reflect this level of wealth.

c. Debtor has not provided any explanation as to where all the money went.

100. Do Debtor's schedules inflate his expenses to disguise his financial well-being? Yes, they do inflate expenses.

a. It is demonstrated above that in 3 categories of expenses Debtor has exaggerated his claim. He doubled the claimed education expenses by including gifts to an adult child toward her graduate level degree.

b. Debtor exaggerated his child support expenses by failing to credit the college room and board expense he paid which his divorce decree provided.

c. Debtor inflated the monthly cost of his brother's Cobra Insurance payments by over $400.

d. The difference between the claimed expenses and the actual expenses is over $2,500 per month.

e. Added to his excess net income, Debtor has over $3,000 per month net disposable income which more than covers Creditor Redish's income

execution.

101. Did Debtor give gifts and claim them as expenses? Yes, he did.

    a.   Debtor included $1,500 per month in his claimed education expenses which Debtor conceded were given to his emancipated daughter for her graduate school Master's Degree.

    b.   Debtor had not legal obligation to pay for schooling of his emancipated children either by statute or by his Divorce Decree.

    c.   Since Debtor had no legal obligation to pay for Amaya's Master's Degree, those payments were gifts.

    d.   Since the gifts were in excess of $600 they should have been scheduled as gifts and not as expenses.

102. Did Debtor overly utilize the protections of the Code to the unconscionable detriment of creditors? Yes, he did.

    a.   Debtor did nothing to pay any part of his obligation under the Redish judgment or to seek the protections of the Code for almost 2 years until Redish served an income execution on his employer this past February.

    b.   By invoking the automatic stay of execution provided by the Code Debtor has demonstrated his intention not to pay any portion of the remaining debt to Redish.

    c.    More than half of the Redish judgment represents the cost of medical and nursing care necessitated by Debtor and his co-defendants' negligence. Eliminating Debtor's obligation will leave a deficit in Creditor Redish's needs.

103. Did Debtor employ a deliberate and persistent plan of evading a single major creditor? Yes, he did.

    a.   Creditor Redish's judgment was docketed and entered on January 23, 2020

    b.   For over 2 years Debtor made no attempt to to pay, compromise, settle, reduce or delay his obligations under the Redish judgment.

    c.   When Redish served an income execution on Debtor's employer, instead of seeking to pay or negotiate his obligation, he filed his Chapter 7 petition invoking the automatic bankruptcy stay.

    d.   The mortgages and his car loans will continue regardless of the outcome of this case. The Redish judgment is the only secured debt that will be wiped out should Debtor be discharged.

104. Did Debtor fail to make candid and full disclosure? Yes, he did fail to make full disclosure.

    a.   Debtor failed to list the cause of action for bad faith against his insurance company as an asset. That asset would completely cover the Redish judgment.

    b.   Debtor failed to list the cause of action for legal malpractice against his attorneys in the state court Redish malpractice case for not adequately advising him the conflict of interest between Debtor and the co-defendant doctors. This cause of action would also cover the Redish judgment.

    c.   Debtor has not only understated his income and overstated his expenses, but he has undertaken to pay the expenses of his girlfriend, hide money in

his IRAs and not report large gifts to his children.

    d.  Debtor has also given gifts to his eldest daughter in excess of $600 and failed to schedule them.

    e.  Debtor claimed the $7,000 he gave his eldest daughter in two monthly payments were college costs for his son. However, those payments, which he claimed were monthly college costs, would be far in excess of the actual needs.

    f.  Debtor has used his credit card payments to obscure his spending in order to protect his lavish lifestyle.

105. The test for cause as a basis for dismissal of a Chapter 7 petition has been fully demonstrated herein. Debtor's filing is an abuse of the Code and was done in bad faith. For all of the reasons enumerated above, this Court should find that there is ample cause for the Court to dismiss Debtor's petition.

WHEREFORE, Creditor Redish respectfully requests this Court dismiss Debtor, Darryl Lee Adler's Chapter 7 petition for cause, and for such other relief as this Court may deem just and proper.

Dated: New York New York
        December 20, 2023

                    GURFEIN DOUGLAS LLP
                    11 Park Place
                    New York, New York 10007
                    (212) 406-1600

                    By: */s/ Richard A. Gurfein*
                        Richard A. Gurfein
                        rgurfein@gurfeindouglas.com

*Attorney for Creditor Keimoneia Redish*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re:                                                              Chapter 7

DARRYL LEE ADLER,                                   Case No.  23-22201 (SHL)

                        Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

## ORDER DISMISSING THE CASE

Keimoneia Redish, creditor, having duly made an application (the "Application") on
notice to parties in interest seeking an order dismissing this case; and the same having come on
for hearing (the "Hearing") on February 1, 2024, and it

**APPEARING**, that good and sufficient notice of the Application and the Hearing was
provided to the Debtor and other parties in interest, and it

**FURTHER APPEARING**, after the Hearing and due consideration having been given to
all parties in interest, it is

**ORDERED,** that the application is granted; and it is further

**ORDERED**, that this case is dismissed pursuant to 11 U.S.C. §707(a) for cause.


Dated:  White Plains, New York
           December 20, 2023

                                        <u>s/ Sean H. Lane</u>

                                        Hon Sean H. Lane
                                        U.S. Bankruptcy Court

1