**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re:

                                Chapter 7

DARRYL LEE ADLER

                                Case No. 23-22201 (KYP)

        Debtor.
---------------------------------------------------------------x

# MEMORANDUM DECISION AND ORDER DENYING
# CREDITOR'S MOTION TO DISMISS BANKRUPTCY CASE

**APPEARANCES:**

GURFEIN DOUGLAS LLP
*Counsel to Creditor Keimoneia Redish*
11 Park Place
New York, NY 10007
   By:    Richard A. Gurfein, Esq.
             Of Counsel


CULLEN & DYKMAN LLP
*Counsel to Debtor*
333 Eagle Ovington Boulevard
Uniondale, NY 11553
   By:    Ralph Preite, Esq.
             Of Counsel


**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Creditor Keimoneia Redish ("Creditor") seeks dismissal of Dr. Darryl L. Adler's ("Debtor") Chapter 7 bankruptcy case on bad faith grounds ("Motion").[1] The Debtor opposes the Motion.[2] For the reasons set forth herein, the Motion is DENIED.

## BACKGROUND

### A. The State Court Action

The Debtor is a board-certified critical care physician. The Creditor was admitted to the hospital for an asthma attack and was treated by the Debtor and other doctors. *See Redish v. Adler*, 195 A.D.3d 452, 452 (N.Y. App. Div. 2021) ("*Appellate Division Decision*"). The doctors departed from generally accepted medical practices leading to the Creditor suffering permanent brain injury. *Id.*

In 2011, the Creditor commenced a malpractice action in the Supreme Court of the State of New York, Bronx County ("State Court"), against the Debtor, Dr. Ronald Ciubotaru,[3] Dr. Richard Stumacher, Dr. Abdurham Ahmed, and St. Barnabas Hospital ("State Court Action"). *See Redish v. Adler, et al.*, Index No. 310294/11. On April 12, 2019, after a multi-day trial, the jury returned a verdict in favor of the Creditor including, among other items, damage awards of $60 million for past pain and suffering and $30 million for future pain and suffering. (*See Judgment*, entered on Jan. 23, 2020

---

[1] *See Motion to Dismiss Debtor, Darryl Lee Adler[']s Petition For Cause Pursuant to Bankruptcy Code §707(a)*, dated December 20, 2023 ("Creditor Brief") (ECF Doc. # 89); *see also Creditor Redish's Reply to Debtor's Opposition to Creditor's Motion to Dismiss Petition*, filed on Feb. 27, 2025 ("Creditor Reply") (ECF Doc. # 184). "ECF Doc. # _" refers to documents filed on the electronic docket of this bankruptcy case. "ECF p. _" refers to the page number imprinted across the top of the page by the Court's electronic filing system.

[2] *See Debtor's Opposition to Redish's 707(a) Motion to Dismiss*, dated Sept. 16, 2024 ("Debtor Brief") (ECF Doc. # 141).

[3] Dr. Ciubotaru has since passed away.

2

("State Court Judgment") at 2-3.)[4] In November 2019, the State Court ordered a new trial to determine pain and suffering damages unless the Creditor stipulated to the reduction of past and future pain and suffering damages to $7 million and $23 million, respectively. (*Id.* at 3.) The Creditor stipulated to the reduced amounts (*id.*), and the State Court entered the State Court Judgment on January 23, 2020.

The defendant doctors appealed to the Supreme Court of the State of New York, Appellate Division, First Judicial Department ("Appellate Division"), which issued the *Appellate Division Decision* on June 3, 2021. The Appellate Division ruled that the jury verdict in favor of the Creditor "was supported by legally sufficient evidence and was not against the weight of the evidence." *Appellate Division Decision*, 195 A.D.3d at 452. But the appeals court found that the "award of $30 million for past and future pain and suffering deviates materially from reasonable compensation . . . ." *Id.* at 453.

The Court is advised by the Creditor that the value of the judgment, following the appeal, was $22,925,094.82. (Creditor Reply at 4.) Such amount was subsequently reduced by (i) payments from the doctors' insurers to the Creditor totaling $9,200,000 plus interest, and (ii) an agreement with defendant St. Barnabas Hospital to pay the Creditor $8,500,000 over nine years. (*Id.* at 5.) Thus, the amount that remains owed to the Creditor is $5,225,094.82. (*Id.*)

**B.    The Debtor's Bankruptcy Filing and this Motion**

The Debtor did not pay the remaining amount owed to the Creditor, and in February 2023, the Creditor delivered to the Sheriff of Westchester County an income execution ("Income Execution") against the Debtor directing the Debtor's employer

---

4       A copy of the State Court Judgment is attached to the Debtor Brief as Exhibit A.

3

– Northwell Health ("Northwell") – to withhold a portion of the Debtor's salary. (Creditor Brief ¶ 6.)[5] The Sheriff served the Income Execution on Northwell, and Northwell deducted $1,400 from the Debtor's paycheck. (*Id.* ¶ 7.)

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on March 15, 2023 ("Petition Date"), and Marianne T. O'Toole was appointed Chapter 7 trustee ("Trustee") of the Debtor's bankruptcy estate. On November 20, 2023, the Debtor was deposed pursuant to Federal Bankruptcy Rule 2004 ("Rule 2004 Deposition").[6]

The Creditor filed the instant Motion on December 20, 2023 seeking dismissal of the Debtor's bankruptcy case. The Creditor asserts that the Debtor filed his bankruptcy petition in bad faith by, among other things,

- understating his income (Creditor Brief ¶¶ 20-25, 66-71; Creditor Reply ¶¶ 22-25);
- overstating his expenses (Creditor Brief ¶¶ 26-36, 82-91, 100-01; Creditor Reply ¶¶ 14-19, 32, 42, 53);
- omitting assets including potential claims he has against his malpractice insurer (Creditor Brief ¶¶ 37-51, 104; Creditor Reply ¶¶ 9-11, 45-47);
- placing funds beyond the reach of the Trustee and Creditors by making deposits into a retirement account in the months leading to the bankruptcy filing (Creditor Brief ¶¶ 52-57, 93; Creditor Reply ¶ 38);
- living an extravagant lifestyle pre-petition rather than paying down the debt owed to the Creditor (Creditor Brief ¶¶ 58-60, 94, 96; Creditor Reply ¶¶ 13, 39-41); and

---

[5]    A copy of the Income Execution is available at ECF Doc. # 89-1.

[6]    A copy of the Rule 2004 Deposition transcript and the errata sheet are attached to the Debtor Brief at Exhibit J, and references to that transcript will be denoted as "Tr. at _:_." Rule 2004 of the Federal Rules of Bankruptcy Procedure provides that, "[o]n a party in interest's motion, the court may order the examination of any entity." FED. R. BANKR. P. 2004(a). Under Rule 2004, the movant may seek discovery on "(A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; (C) any matter that may affect the administration of the debtor's estate; or (D) the debtor's right to a discharge." FED. R. BANKR. P. 2004(b)(1).

4

- filing for bankruptcy to avoid paying the debt owed to the Creditor (Creditor Brief ¶¶ 95, 103; Creditor Reply ¶¶ 43-44, 56).

The Debtor filed his opposition to the Motion on September 16, 2024 appending the Debtor's financial records to rebut the Creditor's arguments. (*See* Debtor Brief and exhibits appended thereto.) The Creditor filed her reply brief on February 27, 2025 (*see* Creditor Reply), and the Court heard oral argument on May 22, 2025.

## DISCUSSION

**A.    Standards Governing the Motion**

Section 707(a) of the Bankruptcy Code provides that the Court may dismiss a Chapter 7 bankruptcy case "for cause." The moving party bears the burden of proving cause by a preponderance of the evidence, and the Court has substantial discretion in determining whether cause exists. *In re Ajunwa*, Case No. 11–11363 (ALG), 2012 WL 3820638, at *6 (Bankr. S.D.N.Y. Sept. 4, 2012) (citation omitted). The statute identifies three grounds for relief: unreasonable delay by the debtor, nonpayment of statutory fees or charges, and failure to file information required under 11 U.S.C. § 521(a)(1). 11 U.S.C. § 707(a)(1)-(3). But the three enumerated grounds are "illustrative, not exclusive," *Schwartz v. Geltzer* (*In re Smith*), 507 F.3d 64, 72 (2d Cir. 2007), and the Court must "engage in case-by-case analysis" to determine whether "cause" exists. *Dinova v. Harris* (*In re Dinova*), 212 B.R. 437, 442 (B.A.P. 2d Cir. 1997).

The authorities are split on whether a debtor's bad faith can constitute "cause" under section 707(a). The Third, Fourth, Fifth, Sixth, and Eleventh Circuits have held that a debtor's bad faith can constitute "cause" under section 707(a). *Janvey v. Romero*, 883 F.3d 406, 412 (4th Cir. 2018); *Krueger v. Torres* (*In re Krueger*), 812 F.3d 365, 370 (5th Cir.), *cert. denied*, 580 U.S. 925 (2016); *Piazza v. Nueterra Healthcare Physical*

5

*Therapy, LLC* (*In re Piazza*), 719 F.3d 1253, 1260-61 (11th Cir. 2013); *Perlin v. Hitachi Cap. Am. Corp.*, 497 F.3d 364, 369 (3d Cir. 2007); *Indus. Ins. Servs., Inc. v. Zick* (*In re Zick*), 931 F.2d 1124, 1127 (6th Cir. 1991).[7] The Eighth and Ninth Circuits have held to the contrary. *Neary v. Padilla* (*In re Padilla*), 222 F.3d 1184, 1191 (9th Cir. 2000) ("bad faith as a general proposition does not provide 'cause' to dismiss a Chapter 7 petition under § 707(a)"); *Huckfeldt v. Huckfeldt* (*In re Huckfeldt*), 39 F.3d 829, 832 (8th Cir. 1994).[8] The Second Circuit has not yet ruled on the issue,[9] but several bankruptcy courts in the circuit have held that bad faith can constitute "cause" under section 707(a). *In re Campbell*, Case No. 22-11414 (JPM), 2023 WL 4417325, at *4 (Bankr. S.D.N.Y. July 7, 2023) (noting that "bankruptcy courts in this circuit routinely consider bad faith as cause to dismiss"); *In re Aiello*, 428 B.R. 296, 302 (Bankr. E.D.N.Y. 2010); *In re Gutierrez*, 528 B.R. 1, 14 (Bankr. D. Vt. 2014); *In re Lombardo*, 370 B.R. 506, 511 (Bankr. E.D.N.Y. 2007). Bankruptcy courts in the Second Circuit have often analyzed

---

[7] The Seventh Circuit agreed that section 707(a) is not limited to the enumerated grounds set forth in subsections (1) through (3) but was reluctant to adopt the "bad faith" terminology used by other courts. *In re Schwartz*, 799 F.3d 760, 763 (7th Cir. 2015) ("These and other cases often use 'bad faith' to denote 'cause' for dismissing a bankruptcy petition for other than procedural reasons, but we can't see what is gained by the terminological substitution."); *see also id*. at 764 (ruling that "an unjustified refusal to pay one's debt is a valid ground under 11 U.S.C. § 707(a) to deny a discharge of a bankrupt's debts").

[8] Notably, section 707(b) was amended in 2005 to require a bankruptcy court to consider "whether the debtor filed the petition in bad faith" when deciding a motion to dismiss a Chapter 7 case of an individual whose debts are primarily consumer debts. 11 U.S.C. § 707(b)(3)(A). But, whereas section 707(b) was amended to include consideration of a debtor's bad faith, a comparable amendment was not made to section 707(a). *See Ajunwa*, 2012 WL 3820638, at *6 ("There is a further question whether the cases survived the 2005 Amendments, as the adoption in 2005 of a specific 'filed in bad faith' standard in § 707(b) supports the proposition that bad faith cannot serve as a cause for dismissal under § 707(a).").

[9] In a summary order, the Second Circuit affirmed a bankruptcy court's denial of a creditor's motion to dismiss under section 707(a) on bad faith grounds. *Owens v. Owens*, 155 F. App'x 42, 44-45 (2d Cir. 2005) (summary order). In its ruling, the Second Circuit cited precedent supporting the proposition that "cause" under section 707(a) should be reviewed on a case-by-case basis and that a finding of bad faith under section 707(a) is subject to a stringent standard. *Id*. at 45 (citing *Dinova*, 212 B.R. at 442 and *Zick*, 931 F.2d at 1129). Although non-precedential, the *Owens* order suggests that the Second Circuit would consider a debtor's bad faith when deciding whether "cause" exists under section 707(a).

6

bad faith under section 707(a) by reference to 14 factors identified in *Lombardo*, 370 B.R. at 511-12.[10] *See Campbell*, 2023 WL 4417325, at *5 (noting that the *Lombardo* test has been utilized by numerous bankruptcy courts in the circuit). However, "[i]t is not enough simply to list factors and assert that they add up to 'bad faith.'" *In re Grullon*, 2014 WL 2109924, at *4 (Bankr. S.D.N.Y. May 20, 2014). Even among courts that take a broader view of section 707(a), there is a "general consensus" that the standard for finding bad faith is "stringent" and should be limited to "egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyles, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." *Ajunwa*, 2012 WL 3820638, at *6 (quoting *Zick*, 931 F.2d at 1129) (internal quotation marks and emphasis omitted). Further, where a debtor's misconduct is addressed by relief available under more specific provisions of the Bankruptcy Code, such misconduct "cannot properly constitute grounds for dismissal under a vague general equitable concept such as 'bad faith.'" *Grullon*, 2014 WL 2109924, at *2; *accord In re Chovev*, 559 B.R. 339, 346 (Bankr. E.D.N.Y. 2016).

In *Grullon* and *Ajunwa*, Bankruptcy Judge Allan Gropper (ret.) left open the issue of whether bad faith may constitute "cause" under section 707(a) but nonetheless

---

[10] The fourteen factors are: (1) the debtor's manipulations having the effect of frustrating one particular creditor; (2) the absence of an attempt to pay creditors; (3) the debtor's failure to make significant lifestyle changes; (4) the debtor has sufficient resources to pay substantial portion of debts; (5) the debtor inflates expenses to disguise financial well-being; (6) the debtor is overutilizing protections of the Bankruptcy Code to the unconscionable detriment of creditors; (7) the debtor reduced his creditors to a single creditor in the months prior to the filing of the petition; (8) the debtor filed in response to a judgment, pending litigation or collection action; there is an intent to avoid a large single debt; (9) the unfairness of the use of Chapter 7; (10) the debtor transferred assets; (11) the debtor is paying debts to insiders; (12) the debtor failed to make candid and full disclosure; (13) the debts are modest in relation to assets and income; and (14) there are multiple bankruptcy filings or other procedural "gymnastics." *Lombardo*, 370 B.R. at 511-12.

7

denied motions to dismiss because the movants had failed to establish bad faith on the part of the debtor. *Grullon*, 2014 WL 2109924, at *2; *Ajunwa*, 2012 WL 3820638, at *6; *accord Chovev*, 559 B.R. at 347. This Court too need not decide the issue because, assuming a debtor's bad faith can constitute "cause," the Creditor here has not satisfied the stringent standard described in the case law.

**B.    Analysis**

The Creditor's arguments can be grouped into four categories: (1) the Debtor's bankruptcy schedules contain omissions or misstatements, (2) the Debtor lives an extravagant lifestyle, (3) the Debtor placed funds beyond the reach of creditors pre-petition by making deposits into a retirement account, and (4) the Debtor filed bankruptcy to avoid paying the debt owed to the Creditor. Each category is addressed in turn.

   **1.    Misstatements and Omissions From Bankruptcy Schedules**

The Creditor argues that the Court should infer bad faith based on the Debtor's misstatements or omissions from his bankruptcy schedules. Before looking at the specific items in the schedules, the Court notes that the proper analysis for purposes of determining bad faith is not whether each line item is accurate down to the penny; rather, the focus is on whether the Debtor made intentional misrepresentations in his schedules to deceive the Court and his creditors. *Chovev*, 559 B.R. at 348-49 (denying motion to dismiss on bad faith grounds where, among other things, the movant had not presented evidence that the debtor lied about his assets and liabilities in his bankruptcy schedules); *see also Ajunwa*, 2012 WL 3820638, at *6 (dismissals on bad faith grounds are limited to "egregious" cases involving a debtor's concealment or misrepresentation and "conduct akin to fraud, misconduct, or gross negligence") (quotation omitted);

8

*Aiello*, 428 B.R. at 303 ("bad faith findings under Section 707(a) should be limited to extreme misconduct").[11] With that framework in mind, the Court addresses the Creditor's arguments.

The Creditor asserts that the Debtor overstated expenses pertaining to his children. On the Petition Date, one of the Debtor's daughters ("Daughter") was finishing up a master's degree at SUNY New Paltz and the Debtor's son ("Son") was attending college at SUNY Albany. On his Schedule J ("Expense Schedule"),[12] the Debtor listed children's education costs of $3,000 per month and child support payments of $3,033 per month.[13] (Expense Schedule, Part 2.) The Debtor and his ex-spouse divorced in 2007, and their divorce agreement contemplated that they would attempt to agree on splitting their children's college educational costs at a later date. (*See Agreement and Stipulation of Settlement*, dated May 9, 2007 ("Divorce Agreement") at Art. VIII, ¶ 7(a).)[14] The Debtor and his ex-spouse subsequently agreed to equally split the college tuition and expenses of their children. (*See* Tr. at 33:21-22;

---

[11] The Creditor cites cases supporting the general proposition that payment of an adult child's college tuition and related expenses is discretionary and should not be included among a bankruptcy debtor's expenses. *McGowan v. McDermott*, 445 B.R. 821, 825-26 (N.D. Ohio 2011); *In re Baker*, 400 B.R. 594, 599 (Bankr. N.D. Ohio 2009). However, the issue in these cases was whether Chapter 7 bankruptcy cases should be dismissed based on the "totality of circumstances" within the meaning of 11 U.S.C. § 707(b)(3)(B). *McGowan*, 445 B.R. at 825; *Baker*, 400 B.R. at 597. That analysis entails a review of a debtor's ability to repay debts through their disposable income. *McGowan*, 445 B.R. at 825 (citation omitted); *Baker*, 400 B.R. at 597-98 (citation omitted). Bad faith did not play a role in the dismissal of these cases. *McGowan*, 445 B.R. at 823 (acknowledging that the bankruptcy court found "no evidence that the McGowans had engaged in bad faith or other dishonest conduct"); *Baker*, 400 B.R. at 598 ("Herein, there has been no showing of a bad faith filing by the Debtor so dismissal of the Debtor's case cannot be based on the Debtor's lack of honesty."). In contrast, the Creditor's Motion here is based solely on alleged bad faith on the part of Debtor under 11 U.S.C. § 707(a).

[12] The Expense Schedule was filed at ECF Doc. # 2 at ECF pp. 35-36, and a copy is attached to the Debtor Brief as Exhibit C.

[13] The Debtor states that, due to a scrivener's error, the monthly child support payment was understated by $50, and the actual amount was $3,083.33. (Debtor Brief ¶ 88.)

[14] A copy of the Divorce Stipulation is attached to the Debtor Brief as Exhibit I.

97:2-8.) Thus, the $3,000 expense on the Expense Schedule represented the Debtor's one-half share of his Daughter's and Son's monthly educational costs.

The Creditor attacks the Debtor's $3,000 monthly payment in two respects. First, the Divorce Agreement only contemplated the payment of *undergraduate* tuition and expenses (*see* Divorce Agreement, Art. VIII, ¶ 7(a)), yet the Expense Schedule included the Debtor's monthly payment to fund his Daughter's master's degree. Second, the Divorce Agreement permitted the Debtor to take a dollar-for-dollar credit against his child support payment to the extent he was paying a child's college room and board expenses (*see id.*, Art. VIII, ¶ 9(b)), yet the $3,033 child support payment in the Expense Schedule did not include a credit for the amount the Debtor was contributing to fund his Son's room and board costs.

Further, the Expense Schedule included a $1,000 payment on account of health insurance premiums for the Debtor's brother (*see* Expense Schedule, Part 2) who was terminally ill with cancer.[15] The Creditor asserts that the gratuitous payment of his brother's health insurance premiums, as well as overpayments for child support and children's higher education costs, indicate bad faith on the part of the Debtor.

The Court disagrees. Whether these expenses were properly listed as expenses on the Debtor's Expense Schedule is debatable. But the Creditor has presented no evidence showing that the Debtor listed these items to artificially inflate expenses to deceive the Court and creditors.[16] Rather, the exhibits attached to the Debtor Brief show that the

---

[15]    The Debtor's brother has since passed away.

[16]    In fact, the Debtor testified at his Rule 2004 Deposition that he was not even aware that the Divorce Agreement, signed back in 2007, allowed him to reduce his child support payment by the amount he paid for a child's college room and board costs. (Tr. at 31:15-32:7 ("Q. Do you recall [the provision in

10

Debtor had been paying these expenses for a significant period prior to the Petition Date.

Moreover, the Trustee investigated the Debtor's financial affairs consistent with her fiduciary duties. By order dated March 28, 2025, the Court approved a settlement between the Debtor and the Trustee in which the Debtor agreed to pay the Trustee $125,000 to settle potential claims by the Trustee on account of, *inter alia*, the Debtor's valuation of certain property for which the Debtor claimed bankruptcy exemptions as well as pre-petition transfers of assets which could be subject to avoidance under 11 U.S.C. §§ 547 (preferences) and/or 548 (fraudulent transfers). (*See Order Approving Stipulation of Settlement*, dated Mar. 28, 2025 ("Trustee Settlement Order") (ECF Doc. # 187).)[17] Thus, the Debtor has resolved all issues pertaining to the propriety of his pre-petition transfers including any transfers, or portions of transfers, which could be viewed as gratuitous. At the hearing on the instant Motion, the Trustee opined that the Debtor's bankruptcy case should not be dismissed. (*Transcript of May 22, 2025 Hr'g* at 23:11-13 (ECF Doc. # 202).)[18]

The Creditor also points out that the Debtor omitted from his bankruptcy schedules potential legal claims he has against his medical malpractice insurers and/or the attorneys hired by them for their (i) failure to advise the Debtor that the insurance

---

the Divorce Agreement permitting you to take a credit]? A. No, I'm not familiar with that. . . . Q. You have never taken that credit? A. Never.").)

[17]   The Trustee Settlement Order appended an executed copy of the *Stipulation of Settlement* between the Debtor and the Trustee ("Trustee Settlement Agreement").

[18]   The Creditor also argues that the Debtor understated his monthly income of $29,000 in his bankruptcy schedule, but the Debtor provided Northwell paystubs to substantiate that such amount reflected his monthly income on the Petition Date. (*See* Debtor Brief, Ex. D (biweekly Northwell paystubs showing wages of $14,500).)

11

company could provide the Debtor with an attorney to represent him in the State Court Action separate from the attorney retained by the insurer to represent the defendants collectively, and (ii) failure to accept a settlement offer in the State Court Action within the insurance policy limits. Assuming that these claims are colorable, the Debtor was unaware of those potential claims on the Petition Date. (*See Affidavit of Debtor Darryl Lee Adler*, signed on Sept. 13, 2024 ("Adler Affidavit") ¶ 33 (ECF Doc. # 141-30); *see generally* Tr. at 4:4-11:25, 16:8-27:19.) Therefore, the Court cannot find that Debtor's omission of such claims from his bankruptcy schedules was in bad faith. In any event, the Debtor's bankruptcy estate is not prejudiced by the omission because the Trustee is aware of the claims and can assert those claims if she believes they have merit. (*See* Trustee Settlement Agreement ¶ 4 ("Notwithstanding the release provision in paragraph 3 herein and for the avoidance of doubt, nothing herein is intended to abandon or otherwise release any claim that the Trustee or Debtor's estate may have related to or in connection with [the State Court Action] or any related actions, including but not limited to claim(s), if any, alleging that any insurer violated the implied covenant of good faith in rejecting settlement demands or offers.").)

The Creditor also argues that the Court should require the Debtor to amend his schedules because several of his expenses have lapsed since the Expense Schedule was filed on the Petition Date. After the filing of the petition, his Son reached the age of majority, his Son graduated college, his Daughter completed her master's degree, and his terminally ill brother died. But the Debtor's ability to repay the Creditor's claim in the future is not relevant to a bad faith analysis under section 707(a). As the Connecticut Bankruptcy Court explained:

12

> [A] debtor's ability to pay in the future is not a factor a court should consider in a motion to dismiss pursuant to § 707(a). It is only a consideration of "substantial abuse" pursuant to § 707(b). The question of whether a Chapter 7 debtor could meet dischargeable debt obligations in whole or part from future resources is irrelevant to a motion under § 707(a). . . . This is explicitly apparent from the legislative history of the original enactment of § 707(a), which states: "[11 U.S.C. § 707(a)] does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy."

*Deglin v. Keobapha* (*In re Keobapha*), 279 B.R. 49, 53 (Bankr. D. Conn. 2002) (quoting H.R.Rep. No. 95–595 at 380 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6336; S.Rep. No. 95–989 at 94 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5880) (case citation omitted); *accord Owens v. Owens* (*In re Owens*), No. 03 CV. 3408(BSJ), 2005 WL 387258, at *6 (S.D.N.Y. Feb. 17, 2005) (citing *Keobapha* and explaining that, even if the creditor had shown that the debtor was able to repay "some of his debts," such showing "would not prove that Debtor's filing was in bad faith"), *aff'd*, 155 F. App'x 42 (2d Cir. 2005). This Court agrees with the holding in *Keobapha*. Whereas a debtor's increased capacity to repay debts post-petition is important in a Chapter 13 bankruptcy case, *see In re Brody*, 671 B.R. 34, 36-37, 41-43 (Bankr. S.D.N.Y. 2025) (dismissing, on bad faith grounds, Chapter 13 bankruptcy case of a debtor who concealed his post-petition receipt of substantial supplemental income), and a motion to dismiss under section 707(b), *see In re Haddad*, 246 B.R. 27, 32 (Bankr. S.D.N.Y. 2000) ("In evaluating a debtor's ability to repay his or her indebtedness, a court considers the disposable income that would be available to pay creditors under a hypothetical Chapter

13

13 plan.") (citation and internal quotation marks omitted), it is not relevant to a motion to dismiss under section 707(a).[19]

### 2. Lifestyle

The Creditor argues that the Debtor maintained a lavish lifestyle. The evidence shows otherwise. The Debtor owns and lives in an apartment in Yonkers, New York subject to a mortgage and owns two Honda automobiles (2021 Honda Pilot and 2021 Honda HR-V), each substantially encumbered by secured car notes. He has title to a third Honda (2019 Honda HR-V), but it was paid for, and is being driven by, one of the Debtor's daughters. On the Petition Date, the Debtor (along with his ex-spouse) was funding his Daughter's and Son's higher education in New York public universities. In the year preceding the Petition Date, the Debtor took three vacations, but one of those vacations was at the tail-end of a medical conference in San Francisco, after which the Debtor traveled to Lake Tahoe. Last, Debtor's counsel appended numerous financial records to the Debtor Brief showing that the Debtor generally shopped at non-luxury retail stores.

Based on the evidence presented, the Court cannot conclude that the Debtor was living an extravagant lifestyle.

### 3. Pre-Petition Deposits into Retirement Account

The Creditor points out that, in the months leading up to the Petition Date, the Debtor made two deposits totaling $14,500 into a self-directed individual retirement account at JP Morgan Chase Bank ("IRA"). The Debtor claimed the IRA as exempt

---

[19] Indeed, whereas property acquired by a debtor post-petition, as well as post-petition earnings, are included in a Chapter 13 bankruptcy estate, *see* 11 U.S.C. § 1306(a), such assets and earnings are not included in a Chapter 7 bankruptcy estate. *See* 11 U.S.C. § 541(a).

14

under New York law (*see* Schedule C, Part 2 (ECF Doc. # 2 at ECF pp. 17-18)), and no party objected to the claim of exemption. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 643 (1992) (a claimed bankruptcy exemption is valid absent timely objection even if the debtor had no colorable basis for claiming the exemption). The Creditor now argues that the Debtor made these deposits to move funds beyond the reach of creditors. "However, the fact that assets have been converted to exempt form, and thereby placed beyond the reach of creditors, does not automatically result in the conclusion that a transfer was fraudulent." *Pryor v. Fid. Invs. Inst. Servs. Co.* (*In re Morra*), Adversary No. 06–8099–CEC, 2009 WL 2226124, at *4 (Bankr. E.D.N.Y. July 21, 2009) (citing precedent applying this principle in various contexts). "[B]efore the existence of (any) fraudulent purpose can be properly found, there must appear in evidence some facts or circumstances which are extrinsic to the mere facts of conversion of nonexempt assets into exempt and which are indicative of such fraudulent purpose." *Bank of Pa. v. Adlman* (*In re Adlman*), 541 F.2d 999, 1004 (2d Cir. 1976) (quotation omitted); *see also Norwest Bank Neb., N.A. v. Tveten*, 848 F.2d 871, 874 (8th Cir. 1988) ("As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.") (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6317; S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5862).

Here, the Debtor converted $14,500 from nonexempt property to exempt property by depositing those funds into his IRA pre-petition, and no party objected post-petition to the claim of exemption. Although the result is that those funds are no

15

longer available to pay creditors, the action is valid under the precedent cited above absent evidence of fraudulent purpose. The Creditor has failed to present sufficient evidence to show that the Debtor deposited the funds into his IRA for any purpose other than to exercise his bankruptcy exemption rights.

### 4. Filing to Avoid a Single Creditor

Last, the Creditor argues that the Debtor filed the bankruptcy petition in bad faith because the purpose of the filing was to avoid paying the Creditor. Here, the Creditor holds the largest claim against the Debtor, and the Debtor filed the bankruptcy petition right after Northwell deducted a portion of his salary in response to the Income Execution. Nonetheless, "courts have frequently held that filing for bankruptcy in order to counter the collection efforts of one creditor without further indicia of bad faith is insufficient for dismissal under § 707(a)." *Ajunwa*, 2012 WL 3820638, at *7 (citing supporting authorities); *see also Janvey*, 883 F.3d at 414 ("As a legal matter, the fact that a bankruptcy petition was filed in response to a single debt need not alone constitute bad-faith cause for dismissal. Almost every bankruptcy case is filed because a creditor is pursuing a debtor.") (citation and internal quotation marks omitted).

Although it is plain that the Debtor filed this bankruptcy petition to address the Creditor's claim, the overall circumstances surrounding the filing lack other indicia of bad faith for the reasons described herein.

16

**ORDER**

For the reasons set forth herein, the Motion is DENIED.[20]

Dated:   October 27, 2025
         Poughkeepsie, New York

/s/ *Kyu Y. Paek*
Honorable Kyu Y. Paek
United States Bankruptcy Judge

---

[20] Arguments made by the parties but not specifically addressed herein have been considered by the Court and rejected or rendered moot by the Court's ruling.